IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 25-cv-03651-NYW-KAS

SECURITIES AND EXCHANGE COMMISSION,

Plaintiff,

v.

INVESCO ALPHA INC.,

Defendant.

---

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**

---

**ENTERED BY MAGISTRATE JUDGE KATHRYN A. STARNELLA**

This matter is before the Court on Plaintiff's **Application for Entry of Final Judgment by Default** [#9] (the "Motion"). The Motion has been referred to the undersigned. *See Memorandum* [#12]. The Court has reviewed the Motion, the entire case file, and the applicable law. For the following reasons, the Court **RECOMMENDS** that the Motion [#9] be **GRANTED**.

## I. Background

This lawsuit arises from purported material misrepresentations and statements made by Defendant Invesco Alpha, Inc., a purported investment adviser. *Compl.* [#1] ¶ 1. Defendant made those statements—which could not be substantiated—in a form filed with Plaintiff Securities and Exchange Commission ("SEC" or "Plaintiff") and made available to the public on May 30, 2024. *Id*. Those statements concerned Defendant's organization, office location, assets under management, and clients. *Id*. Specifically, Defendant made the following misrepresentations:

- Defendant operates from office space at 9888 W. Belleview Avenue, Denver, Colorado 80123. *Id*. ¶¶ 2, 12. However, no location exists in Denver with the address of 9888 W. Belleview Avenue and zip code of 80123, but a location exists with that address and zip code in Littleton, Colorado, which is part of the Denver metropolitan area. *Id*. ¶ 3. Additionally, the business occupant of the Littleton location at the time of the Complaint's filing, had no knowledge of Defendant or its purported Chief Executive Officer, Chi Keong Tang. *Id*. ¶¶ 4, 26(a).

- Defendant manages $5 million in assets in the United States. *Id*. ¶¶ 2, 23. However, Defendant failed to respond to the SEC's request to provide records to substantiate the information in Defendant's SEC filing, including the amount of private fund assets under management in the United States. *Id*. ¶ 5.

- Defendant also advises a private fund named after it, Invesco Alpha Inc., and a separate registered investment adviser separately reports information about the private fund to the SEC. *Id*. ¶¶ 2, 24, 25. However, the separate registered investment adviser has not reported information about the purported Invesco Alpha Inc. private fund. *Id*. ¶ 4. Additionally, the SEC has not found any reporting of information about the private fund on other filings made with the SEC. *Id*.

- A private fund identification number that Defendant listed for its private fund could not be located in the SEC's database. *Id*. ¶¶ 24, 26(b).

- Defendant claimed it qualified for a registration exemption because it acts solely as an adviser to private funds and has assets under management in the United States of less than $150 million. *Id*. ¶ 20.

- Defendant provided a telephone number for its Colorado office with a 302 area code, even though that are code is for Delaware. *Id*. ¶ 21.

- Defendant provided an unverifiable Central Index Key number, which is a number the SEC assigns to public reporting company and which can be queried on the SEC's computer system to identify corporations and individuals required to file certain disclosure information. *Id*. ¶¶ 22, 26(c).

The SEC also alleges that Defendant failed to respond to its attempts to obtain records for examination, as permitted under Section 204(a) of the Investment Advisers Act, 15 U.S.C. § 80b-4(a). *Id*. ¶¶ 27-32. The SEC's emails went unanswered and its phone

calls did not go through because one number went to a busy tone, and the other number reached a recording stating that the number is not in service. *Id*. ¶¶ 30-32.

The SEC alleges that, by engaging in this conduct, Defendant violated and will continue to violate Sections 204(a) and 207 of the Investment Advisers Act of 1940, 15 U.S.C. §§ 80b-4(a), 80b-7. *Id*. ¶ 6. Accordingly, on November 13, 2025, the SEC brought suit against Defendant under enforcement authority conferred on it by sections 209(d) and 209(e) of the Advisers Act, 15 U.S.C. §§ 80b-9(b) and 80b-9(e). *Id*. ¶ 7. The SEC seeks a final judgment that: (a) permanently enjoins Defendant from violating the federal securities laws as alleged in the Complaint; (b) permanently enjoins Defendant, its owners, and its executive officers from submitting its SEC filings on Form ADV[1] as an exempt reporting adviser; (c) orders Defendant to pay a civil monetary penalty under section 209(e) of the Investment Advisers Act, 15 U.S.C. § 80b-209(e); and (d) orders any other and further relief the Court deems just and proper. *Id*. ¶ 8.

## II. Standard of Review

"When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." FED. R. CIV. P. 55(a). After the clerk enters default, Federal Rule of Civil Procedure 55(b)(2) permits a party to apply to the court for entry of default judgment against the party who has failed to plead or otherwise defend a lawsuit filed against it. A trial court has discretion to enter default judgment; a party is not entitled to it as of right. *Purzel Video GmbH v. Martinez*, 13 F. Supp. 3d 1140, 1148-49 (D. Colo. 2014).

[1] Form ADV is used by investment advisers to register with the SEC and state securities regulators. *Id*. ¶ 2.

"[A] party in default does not admit mere conclusions of law." *Bixler v. Foster*, 596 F.3d 751, 762 (10th Cir. 2010) (citation omitted). The plaintiff still must plead sufficient factual allegations to establish the defendant's liability, and "[t]here must be a sufficient basis in the pleadings for the judgment entered." *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975) (vacating district court's entry of default judgment because the pleadings were insufficient to support the judgment); *see also Topp v. Lone Tree Athletic Club, Inc.*, No. 13-cv-01645-WYD-KLM, 2014 WL 3509201, at *5-10 (D. Colo. July 15, 2014) (adopting recommendation to deny motion for default judgment where the plaintiff failed to "provide the necessary factual details to support" his Fair Labor Standards Act claim). Where a plaintiff's claims are barred or subject to dismissal, the district court may exercise its discretion to deny default judgment. *Bixler*, 596 F.3d at 762. The court may not enter default judgment where a complaint fails to satisfy the elements of the asserted claims or otherwise fails to state a cognizable claim, whether through well-pleaded allegations or supporting documents. *Day v. Career Bldg. Acad.*, No. 18-cv-00837-RM-KMT, 2021 WL 1723777, at *2 (D. Colo. Mar. 18, 2021). Additionally, courts "may not enter a default judgment without a hearing unless the amount claimed is a liquidated sum or one capable of mathematical calculation." *Niemi v. Lasshofer*, 770 F.3d 1331, 1352 (10th Cir. 2014) (quoting *Venable v. Haislip*, 721 F.2d 297, 300 (10th Cir. 1983)).

In deciding whether a legitimate basis exists for entry of judgment against a defendant, as the defaulting party, the court must find that: (1) it has subject matter jurisdiction over the plaintiff's claims; (2) it can assert personal jurisdiction over the defendant; (3) the clerk properly entered default; (4) the plaintiff states a valid claim for

relief; and (5) damages are ascertainable. *Postnet Int'l Franchise Corp. v. Jones*, No. 12-cv-03065-WYD, 2013 WL 5449855, at *1 (D. Colo. Sept. 30, 2013).

## III. Analysis

### A. Subject Matter Jurisdiction

The Court has subject matter jurisdiction under 28 U.S.C. § 1331, which grants original jurisdiction to federal courts over all civil actions arising under the Constiution, laws, or treaties of the United States. This is a lawsuit arising under section 214 of the federal Investment Advisers Act, 15 U.S.C. § 80b-14. Accordingly, the Court has subject matter jurisdiction over the SEC's claims.

### B. Personal Jurisdiction

"[S]ervice of process provides the mechanism by which a court having venue and jurisdiction over the subject matter of an action asserts jurisdiction over the person of the party served." *Okla. Radio Assocs. v. F.D.I.C.*, 969 F.2d 940, 943 (10th Cir. 1992). "[D]istrict courts cannot obtain personal jurisdiction without proper service." *Doran Law Office v. Stonehouse Rentals, Inc.*, 678 F. App'x 733, 735 (10th Cir. 2017) (citing *Omni Cap. Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987)).

A domestic or foreign corporation must be served "in the manner prescribed by Rule 4(e)(1) for serving an individual." Fed. R. Civ. P. 4(h)(1)(A). Rule 4(e)(1) provides that an individual may be served "by following state law for serving a summons in an action[.]" According to Colorado law, "if the registered agent cannot with reasonable diligence be served, the entity may be served by registered mail or by certified mail, return receipt requested, addressed to the entity at its principal address." COLO. REV. STAT. § 7-90-704(2).

On November 14, 2025, the SEC sent the Summons and Complaint via certified mail, return receipt requested, to Defendant's principal address (9888 E. Bellevue), which is also the address of its registered agent, Chi Keong Tang, as listed in the certificate of incorporation filed with the Colorado Secretary of State. *Decl. of Service* [#5] ¶¶ 3, 9; *see also Def.'s Ex. A*, *Pl.'s Articles of Incorporation* [#5] at 4; *Ex. C*, *Copy of Mailed Package* [#5] at 7. The SEC served the Summons and Complaint by certified mail, as permitted under Colo. Rev. Stat. § 7-90-704(2) because the SEC's investigation revealed that Plaintiff's 9888 W. Belleview address could not be verified. *Decl. of Service* [#5] ¶¶ 2, 6. This inability to connect Defendant's reported address with its actual address was corroborated by an email the SEC's trial counsel received from the business occupant of 9888 W. Bellevue in Littleton, Colorado, which stated that he had no knowledge of Plaintiff Invesco Alpha or its CEO Chi Keong Tang. *Id.* ¶ 4. Based on this, the Court finds that it has personal jurisdiction over Defendant.

**C. Clerk's Entry of Default**

The SEC initiated this action on November 13, 2025. *Compl.* [#1]. Plaintiff served Defendant on November 19, 2025, which is five days after the Summons and Complaint were sent via certify mail. *See Decl. of Service* [#5] ¶ 9; *Def's Ex. C*, *Copy of Mailed Package* [#5] at 7; COLO. REV. STAT. § 7-90-704(2) (stating that service by certified mail is perfected five days after mailing). Defendant's deadline to file an answer or otherwise respond was December 10, 2025, three weeks after service. *See* FED. R. CIV. P. 12(a)(1)(A)(i). Defendant failed to answer or otherwise respond to the SEC's Complaint. Accordingly, the Clerk of Court properly entered default on the SEC's motion on January 2, 2026. *See Motion for Entry of Default* [#6]; *Clerk's Entry of Default* [#7].

### D. Whether the SEC has Stated a Valid Claim for Relief

The SEC has asserted violations of Sections 204(a) and 207 of the Investment Advisers Act, 15 U.S.C. §§ 80b-4(a), 80b-7.

#### 1. Violation of Section 204(a)

15 U.S.C. § 80b-4(a) requires investment advisers who use the mail or other means or instrumentality of interstate commerce in connection with the investment adviser business, shall maintain for set periods, provide copies of, and disseminate such reports as the SEC may require by rule to promote "the public interest or for the protection of investors." Those records "are subject at any time, or from time to time, to such reasonable periodic, special, or other examinations by representatives of the [SEC] as the [SEC] deems necessary or appropriate in the public interest or for the protection of investors." 15 U.S.C. § 80b-4(a). "The registration and disclosure provisions are crucial to the operation of the Act and [courts] cannot condone their blatant abuse." *Marketlines, Inc. v. SEC*, 384 F.2d 264, 267 (2d Cir. 1967).

The implementing regulation for this statute requires a registered investment adviser to amend its Form ADV when Parts 1 or 2 become materially inaccurate, annually, and as required by Form ADV's instructions. *See* 17 C.F.R. § 275.204-1(a); *SEC v. K.W. Brown & Co.*, 555 F. Supp. 2d 1275, 1310 (S.D. Fla. 2007) (discussing when amendments are required). Additionally, the implementing regulations make clear that amendments to Form ADV "are reports" within the meaning of sections 204 and 207 of the Investment Advisers Act. 17 C.F.R. § 275.204-1(d).

The Complaint alleges that, since November 19, 2024, the SEC has "attempted to obtain books and records from [Defendant] that it is required to produce under the Investment Advisers Act. *Compl.* [#1] ¶ 29. Specifically, the SEC sought to verify the

information Defendant listed in its Form ADV, including its contact information, its CEO's identity, and the amount of assets it managed. *See, e.g.*, *id.* ¶¶ 20-26. On three occasions, the SEC emailed Defendant with a request for this material, with no success. *Id.* ¶¶ 30, 32. On another occasion, the SEC tried to request the materials via telephone, but neither call successfully connected. *Id.* ¶ 31. The SEC has adequately alleged that Defendant repeatedly failed to produce records for examination. Therefore, the SEC has stated a valid claim for a violation of Section 204(a) of the Advisers Act. *See SEC v. Barr Fin. Grp., Inc.*, No. 98-1806-CIV-T-17E, 1999 WL 1209520, at *4 (M.D. Fla. May 5, 1999) (finding, as a matter of law, that the defendant violated Section 204 of the Advisers Act by failing to comply with the relevant record-keeping provisions).

**2. Violation of Section 207**

Section 207 of the Act, 15 U.S.C. § 80b-7, renders unlawful any willfully made "untrue statement[s] [or omissions of statements] of a material fact in any registration application or report filed with the [SEC] under section 80b-3 or 80b-4[.]" Section 80b-3 governs the registration of investment advisers, and Section 80b-4 governs reports by investment advisers. A Section 207 violation requires an intentional or reckless—as opposed to negligent—misstatement or omission. *Robare Grp., Ltd. v. SEC*, 922 F.3d 468, 479-80 (D.C. Cir. 2019). In this context an omitted fact is "material" if a "substantial likelihood" exists "that the disclosure of the omitted fact, would have been viewed by the reasonable investor as having significantly altered the 'total' mix of information available." *SEC v. Moran*, 922 F. Supp. 867, 899 (S.D.N.Y. 1996) (quoting *TSC Indus. v. Northway, Inc.*, 426 U.S. 438, 449 (1976)) (other citation omitted).

Here, the Court finds that the SEC has adequately alleged that Defendant's misrepresentations in its Form ADV are material. The accuracy and completeness of

Defendant's address, the identity of its CEO, the identity and location of its registered agent, the amount of assets it manages, whether it advises a private fund and the amount of assets in that fund, and its Central Index Key number are "essential" to the public interest. *See Moran*, 922 F. Supp. at 899 (quoting *In re Justin Federman Stone*, 41 S.E.C. 717, 723 (1963)); *see also SEC v. Nadel*, 97 F. Supp. 3d 117, 123-24 (E.D.N.Y. 2015) (concluding that "any reasonable investor would consider the accurate amount of assets under management to be a material fact to consider before investing . . . . because any reasonable investor would need" that information "to correctly evaluate an asset manager's performance."). Relatedly, a reasonable investor needs reliable information about the investment adviser's management and location so that the investor may conduct its own due diligence to assess performance and manage investment risks. For reasons discussed in connection with the alleged Section 204(a) violation, the Court concludes that the SEC has adequately alleged that Defendant willfully made material misstatements and unsubstantiated statements in violation of Section 207 of the Advisers Act.

**E. Damages**

A plaintiff who seeks default judgment must "establish that on the law it is entitled to the relief it requests, given the facts as established by the default." *N. Star Sci. Sols., LLC v. Mich. Health Clinics*, No. 24-cv-00541-GPG-STV, 2025 WL 902427, at *4 (D. Colo. Feb. 25, 2025) (internal quotation and citation omitted), *report and recommendation adopted*, 2025 WL 1251222 (D. Colo. Mar. 27, 2025). While a complaint's well-pleaded facts are accepted as true on a motion for default judgment, "allegations relating to the amount of damages are generally not accepted as true," unless those facts are set forth in affidavits and exhibits. *Id*. A plaintiff "must provide detailed support for [its] damage

claim." *Zayo Grp., LLC v. 6x7 Networks, LLC*, 637 F. Supp. 3d 1164, 1168 n.5 (D. Colo. 2022) (citation omitted). Here, the SEC seeks injunctive relief and a civil penalty.

**1. Injunctive Relief**

Section 209(d) of the Investment Advisers Act, 15 U.S.C. § 80b-9(d), permits the SEC to seek injunctive relief where a person appears to have engaged in a violation of the Investment Advisers Act. "Upon a showing that such person has engaged, is engaged, or is about to engage in any such act or practice, . . . a permanent or temporary injunction or decree or restraining order shall be granted without bond." *Id*. As with any request for injunctive relief, the SEC must demonstrate "(1) actual success on the merits; (2) irreparable harm unless the injunction is issued; (3) the threatened injury outweighs the harm that the injunction may cause the opposing party; and (4) the injunction, if issued, will not adversely affect the public interest." *United States v. Uintah Valley Shoshone Tribe*, 946 F.3d 1216, 1222 (10th Cir. 2020).

For reasons discussed in section III(D), above, the Court finds that the SEC has demonstrated actual success on the merits. The Court also finds that the public will be irreparably harmed unless the injunction is issued. Defendant's misrepresentations appear to be designed to mislead the public, and the Court agrees with the SEC that Defendant's "degree of scienter" as demonstrated by its attempt to cover its tracks and avoid accountability, "and its failure to respond at all to the SEC . . ., all point toward a likelihood of future violations and irreparable harm[.]" *Motion* [#9] at 12. The Court further agrees with the SEC that "[t]he potential injury to the investing public outweighs the harm any injunction may cause [Defendant] if it is allowed to publish false information to the SEC (and to the State of Colorado)." *Id*. Finally, an injunction will only promote—not

adversely impact—the public interest. Simply put, an injunction will promote rather than detract from the public's confidence in the reliability of investment adviser-related information made available to them under the Investment Adviser Act, ostensibly under the SEC's imprimatur.

Accordingly, the Court **recommends** that Defendant, its owners, and its executive officers be enjoined from filing a Form ADV as an Exempt Reporting Adviser.

**2. Civil Penalty**

Section 209(e) of the Investment Advisers Act, 15 U.S.C. § 80b-9(e), permits a court to impose a civil penalty to be paid by the person who violated the Act. Civil penalties "further the dual goals of punishment of the individual violator and deterrence of future violations." *Off. Comm. of Unsecured Creditors of WorldCom, Inc. v. SEC*, 467 F.3d 73, 81 (2d Cir. 2006). The Act provides for three tiers of civil penalties. 15 U.S.C. § 80b-9(e)(2). Second tier penalties, which shall not exceed $50,000 for "a natural person" or $250,000 "for any other person," or "the gross amount of pecuniary gain to such defendant as a result of the violation," are reserved for violations that involve "fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement." 15 U.S.C. § 80b-9(e)(2)(B). Third tier penalties, which shall not exceed $100,000 for a natural person or $500,000 for any other person, or "the gross amount of pecuniary gain to such defendant as a result of the violation," are reserved for violations that involve "fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement" *and* that "directly or indirectly resulted in substantial losses or created a significant risk of substantial losses to other persons." 15 U.S.C. § 80b-9(e)(2)(C).

Courts determine the penalty amount based on the facts and circumstances. *See* 15 U.S.C. § 80b-9(e)(2)(A). To guide their determination, courts consider various factors,

including "(1) the egregiousness of the defendant's conduct; (2) the degree of the defendant's scienter; (3) whether the defendant's conduct created substantial losses or the risk of substantial losses to other persons; (4) whether the defendant's conduct was isolated or recurrent; and (5) whether the penalty should be reduced due to the defendant's demonstrated current and future financial condition." *U.S. SEC v. Grenda Grp., LLC*, 621 F. Supp. 3d 406, 412 (W.D.N.Y. 2022) (quoting *SEC v. Rajaratnam*, 918 F.3d 36, 44 (2d Cir. 2019)); *see also SEC v. GenAudio*, 32 F.4th 902, 954 (10th Cir. 2022) (applying the factors to violations of the Securities Exchange Act). "Courts may also consider a defendant's wealth, his or her refusal to admit wrongdoing, and his or her lack of cooperation with authorities." *Id*.

The SEC asks the court to impose "two statutory second-tier civil penalties of $591,127 each, for a total amount of $1,182,254," which is adjusted for inflation. *Motion* [#9] at 14 & n.4 (citing 17 C.F.R. § 201.1001(b) providing inflationary adjustments to statutory penalty amounts). The SEC explains that this amount "strikes the right balance in light of the egregious conduct [Defendant] exhibited and the need" to "deter [Exempt Reporting Advisers] from ignoring [SEC] requests for information." *Id*. at 15. The Court agrees. Defendant's actions consistently demonstrate a willingness to conceal where it is located, who manages it, how it can be served, what amount of assets it manages, and what private fund it advises. It has deceived the SEC and its deceptive filings with the State of Colorado have thwarted efforts to serve process—all in an apparent to avoid accountability. The world of securities and investments is confusing for many. That is why they put their trust in investment advisers. Defendant's alleged conduct only serves to erase that trust and sow confusion.

Accordingly, the Court **recommends** that a total statutory penalty of $1,182,254 be imposed against Defendant.

## IV. Conclusion

Based on the foregoing,

IT IS HEREBY **RECOMMENDED** that the Motion [#9] be **GRANTED**.

IT IS FURTHER **RECOMMENDED** that the Court enter the SEC's proposed Final Judgment by Default [#9-1].

IT IS FURTHER **ORDERED** that any party may file objections **within 14 days** of service of this Recommendation. In relevant part, Federal Rule of Civil Procedure 72(b)(2) provides that, "within 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. 2121 E. 30th St.*, 73 F.3d 1057, 1060 (10th Cir. 1996). The objection must be "sufficiently specific to focus the district court's attention on the factual and legal issues that are truly in dispute." *Id.* "[A] party who fails to make a timely objection to the magistrate judge's findings and recommendations waives appellate review of both factual and legal questions." *Morales-Fernandez v. I.N.S.*, 418 F.3d 1116, 1119 (10th Cir. 2005).

Dated: August 25, 2026 BY THE COURT:

Kathryn A. Starnella
United States Magistrate Judge